UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES R. MOYSEY, JR.                                    PLAINTIFF

V.                              CIVIL ACTION NO. 3:21-CV-473-KHJ-MTP

BMR TRANSPORT, LLC and
RICHARD B. COOK                                        DEFENDANTS

ORDER

Before the Court are Defendants BMR Transport, LLC's ("BMR") and

Richard B. Cook's [58] Motion for Partial Summary Judgment, [60] Motion to

Exclude or Limit Opinions of Mitchell Mullins and John Ward, and [62] Motion to

Strike Expert Disclosure. For the following reasons, the Court grants the [58]

Motion for Partial Summary Judgment and denies the [60] Motion to Exclude and

[62] Motion to Strike.

I.      Background

This case arises from a truck accident in Simpson County, Mississippi.

Compl. [1-1] ¶¶ 8-9. Plaintiff James R. Moysey, Jr., drove a 2016 Freightliner while

Defendant Cook drove an International tractor-trailer for BMR. *Id.* Cook rear-ended

Moysey's Freightliner with the tractor-trailer. *Id.* ¶ 9; Mem. Supp. Mot. Partial

Summ. J. [59] at 1. Moysey asserts various claims, including negligence against

Cook, and vicarious liability, negligence, and gross negligence against BMR. [1-1] at

4-8.

Moysey also makes various allegations against BMR related to driver compliance and out-of-service rates and against Cook related to his prior criminal and misdemeanor convictions. *See id.* ¶¶ 10-14. Given Cook's convictions, Moysey alleges BMR negligently hired and retained Cook as a driver. *Id.* ¶ 13. Based on those allegations, he asserts a claim for punitive damages against both Defendants along with his other claims. *Id.* at 9. Defendants move for partial summary judgment on the punitive-damages claims and the direct-negligence claim against BMR. [58] ¶ 4.

To support his claims, Moysey designated three experts: Dr. Mitchell Mullins, a medical physician and Certified Life Care Planner; Dr. John Ward, an economist; and Dr. Matthew Gornet, a "board certified spine surgeon." [72] at 1; [74] at 1. Defendants move to exclude or limit those opinions. *See* [60]; [62]. The Court first addresses the summary-judgment motion.

## II.   Motion for Partial Summary Judgment

### A.   Standard

Summary judgment is appropriate if the movant shows "no genuine dispute as to any material fact" exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, its resolution could affect the outcome of the action." *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (internal quotations omitted). A dispute is "genuine" if evidence demonstrates that a "reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th

Cir. 2019) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court construes all facts in the non-movant's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

If the non-movant bears the burden of proof at trial, the movant need only demonstrate the record lacks evidentiary support for the non-movant's claim. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). The movant must "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party need not "present evidence proving the absence of a material fact issue . . . [but] may meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Trans. Co.*, 402 F.3d 536, 544 (5th Cir. 2005) (internal quotation omitted). That said, "unsubstantiated assertions are not competent summary[-]judgment evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation omitted).

If the movant meets its burden, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Bayle*, 615 F.3d at 355 (quotation omitted). The non-movant must present more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321 (citation omitted). The nonmovant's failure "to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of*

3

*Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citation omitted); *Est. of Thornton v. Rankin Cnty.*, 3:13-CV-620, 2015 WL 1650237, at *1, n.1 (S.D. Miss. Apr. 14, 2015). Notably, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458 (quotation omitted).

B. Analysis

1. Direct Negligence Against BMR

Defendants argue Moysey's direct negligence claims against BMR fail as a matter of law. [59] at 4. Moysey responds that the claim is valid based on gross negligence. *See* [70] at 6-8.

Under Mississippi law, any direct liability claims against an employer fail when the employer concedes it would be vicariously liable for any employee's negligence. *Carothers v. City of Water Valley*, 242 So. 3d 138, 144 (Miss. Ct. App. 2017); *Deliefde v. Nixon*, No. 3:19-CV-226, 2021 WL 4164680, at *6-8 (S.D. Miss. Sept. 13, 2021). "[O]nce an employer has admitted that it is liable for an employee's actions, evidence pertaining only to issues of negligent hiring, entrustment, supervision, or maintenance becomes superfluous and possibly unfairly prejudicial." *Deliefde*, 2021 WL 4164680, at *6.

Moysey relies on *Clark v. Lard Oil Co., Inc.*, No. 2:18-CV-109, 2019 WL 5802379, at *6 (S.D. Miss. Sept. 6, 2019) to argue direct-negligence claims are appropriate against an employer who has admitted vicarious liability when gross negligence is involved. [70] at 6-7. That is incorrect. *Clark* likewise notes "when an

4

employer admits vicarious liability for the actions of its employee, all direct negligence claims against the employer . . . are due to be dismissed," and makes no exception for gross negligence. *Clark*, 2019 WL 5802379, at *3 (citation omitted).

BMR has admitted it would be vicariously liable for any simple negligence by Cook. [59] at 4. Moysey fails to show any genuine dispute exists as to that issue. Accordingly, the Court grants summary judgment on any direct-negligence claims against BMR.

### 2. Punitive Damages

Defendants next argue all punitive-damages claims fail as a matter of law. [59] at 5. Specifically, they argue punitive damages claims against BMR based on vicarious liability fail under Mississippi law, and those based on gross negligence against both BMR and Cook fail for lack of evidence. [59] at 5, 9. Moysey only responds as to gross negligence. *See* Resp. Opp. Mot. Partial Summ. J. [70] at 5. He argues punitive damages based on gross negligence are appropriate under the totality of the circumstances, but he cites no evidence of gross negligence. *See id.* at 4-6. The Court first addresses punitive damages based on vicarious liability, then gross negligence.

### a. Vicarious Liability

Mississippi district courts regularly hold that punitive damages cannot be based on vicarious liability. *See, e.g.*, *Deliefde*, 2021 WL 4164680, at *9; *Littlejohn v. Werner Enters., Inc.*, No. 1:14-CV-44, 2015 WL 3484651 (S.D. Miss. June 2, 2015) (collecting cases). They base that conclusion on Mississippi's punitive damages

statute, which requires plaintiffs to provide "evidence *that the defendant against whom punitive damages are sought* acted with actual malice, gross negligence . . . or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a) (emphasis added); *Littlejohn*, 2015 WL 3484651, at *2-3. That language suggests "punitive damages should not be available against a defendant who is innocent of any morally culpable conduct." *Duggins v. Guardianship of Washington Through Huntley*, 632 So. 2d 420, 433 (Miss. 1993) (Lee, J., dissenting).

No Mississippi cases address that issue, so the Court must make an *Erie* guess. *See Littlejohn*, 2015 WL 3484651, at *2; *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013) ("[In] the absence of explicit guidance from the state courts, [a district court] must attempt to predict state law . . . ."); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938). The Court agrees with Justice Lee's and the other district courts' interpretation of Miss. Code Ann. § 11-1-65 and predicts that a Mississippi court would conclude that a plaintiff cannot recover punitive damages solely on a theory of vicarious liability. The Court grants partial summary judgment on Moysey's punitive damages claims against BMR based on vicarious liability.

   b.  Gross Negligence

   To recover punitive damages under Mississippi law, a plaintiff must show a defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a). The trier of fact considers the issue only if the court first determines the plaintiff has met its burden at trial. *See Deliefde*, 2021 WL

6

4164680, at *9 (describing the bifurcated process for determining punitive damages in Mississippi). To make that decision, a court must "decide[] whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard." *Id.* (quoting *Doe v. Salvation Army*, 835 So. 2d 76, 79 (Miss. 2003)). That requires a court to weigh the evidence and judge the credibility of the parties. *Id.*

Contrarily, a court cannot weigh the evidence on a motion for summary judgment. Rather, it must "draw all reasonable inferences in favor of the nonmoving party and avoid credibility determinations and weighing of the evidence." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 342 (5th Cir. 2019). Other Mississippi district courts have recognized the different standards for punitive damages at the summary-judgment stage. *See, e.g.*, *Deliefde,* 2021 WL 4164680, at *9-10; *Noel v. Wal-Mart Stores, Inc.*, No. 3:17-CV-203, 2018 WL 1440538, at *4 (S.D. Miss. Mar. 22, 2018); *Welch v. Loftus*, 776 F. Supp. 2d 222, 227 (S.D. Miss. 2011). The issue at this stage, therefore, is not whether a reasonable, hypothetical trier of fact could find BMR and Cook acted with either malice or gross neglect/reckless disregard. Rather, the question is simply whether "in the light most favorable to [Moysey]" a genuine dispute exists as to whether punitive damages are appropriate. *See Deliefde*, 2021 WL 4164680, at *9-10.

7

i.   Cook

Defendants argue this is a case of "simple negligence in [a] rear-end collision" that does not warrant punitive damages against Cook. *See* [59] at 13-14. They argue Mississippi courts regularly hold that cases involving careless drivers do not warrant punitive damages, citing several cases to support that contention. *See id.* Moysey responds with the same argument he made as to BMR—that punitive damages against Cook are appropriate based on gross negligence.

Punitive damages are generally improper in cases of "typical traffic infractions." *Robinson v. Colucci*, No. 3:16-CV-687, 2017 WL 11379844, at *4 (S.D. Miss. Oct. 30, 2017) (collecting Mississippi state and federal court cases). That includes cases involving excessive speeding and negligent conduct resulting in rear-end collisions. *Id.* (citing *Aldridge v. Johnson*, 318 So. 2d 870 (Miss. 1975); *Mayfield v. Johnson*, 202 So. 2d 630 (Miss. 1967)).

True, punitive damages may be proper when the driver causing the accident is under the influence of drugs or alcohol. *See James W. Sessums Timber Co., Inc. v. McDaniel*, 635 So. 2d 875, 879-80 (Miss. 1994); *James v. Antarctic Mech. Servs., Inc.*, No. 3:18-CV-678, 2019 WL 6794196, at *1-2 (S.D. Miss. Dec. 12, 2019); *Barnes v. Carpenter*, No. 2:14-CV-144, 2014 WL 6068943, at *1 (S.D. Miss. Nov. 13, 2014). But Moysey does not allege, let alone provide evidence, that Cook was under the influence of drugs or alcohol. *See* [1-1] at 4-5. The record is void of any reference to Cook's intoxication, and both drivers' statements at the scene reflect a "typical traffic infraction" occurred. *See* Collision Report [69-5] at 2; *Robinson*, 2017 WL

11379844, at *4. Accordingly, Moysey fails to create a genuine dispute over whether punitive damages are appropriate against Cook, and the Court grants partial summary judgment on that claim.

ii.   BMR

The Court has already determined Moysey cannot recover punitive damages from BMR based on a vicarious liability. But "a plaintiff's independent claims for punitive damages against an employer may proceed despite the employer's admission [of vicarious liability]." *Deliefde*, 2021 WL 4164680, at *8-9 (quoting *Roberts v. Ecuanic Express, Inc.*, No. 2:12-CV-84, 2012 WL 3052838, at *2 (S.D. Miss. July 25, 2012)). Direct liability claims for simple negligence that are dismissed when an employer admits vicarious liability are distinct from any gross negligence claims against the employer. *See id.* (citing *Clark*, 2019 WL 5802379, at *6-7).

But as with Cook, Moysey has provided no evidence that BMR acted with "actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." *See* Miss. Code Ann. § 11-1-65(1)(a). His Complaint's allegations lack support from any documents, testimony, or other evidence. Accordingly, the Court grants summary judgment as to any punitive damages claims against BMR.

C.  Conclusion

For the reasons stated in this section, the Court grants Defendants' [58] Motion for Partial Summary Judgment and dismisses with prejudice Moysey's

direct negligence claim against BMR and any punitive damages claims against both Defendants.

III.   Motion to Exclude or Limit Expert Opinions

Next, Defendants move to exclude the expert opinions of Dr. Mitchell Mullins and to limit the opinions of John Ward. [60]. They argue Mullins's opinions lack medical or factual support, and Ward's opinions should be limited to the extent that he offers opinions based on Mullins's opinions. *See* Mem. Supp. Mot. Exclude [61] at 1-2.

A.  Standard

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmacy, Inc.*, 509 U.S. 579 (1993) govern expert-testimony admissibility. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 "assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Johnson v. Arkema, Inc.*, 685

F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). An opinion is reliable when it is "grounded in the methods and procedures of science and . . . more than unsupported speculation or subjective belief." *Id.* An opinion is relevant when "the expert's reasoning or methodology can be properly applied to the facts in issue." *Id.* (internal quotations omitted). The burden of proof rests on the party seeking to admit the expert. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

To determine reliability, courts use factors set out in *Daubert*: (1) whether the theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known potential rate of error of the particular theory or technique, and whether means exist for controlling its operation; and (4) the extent to which the theory or technique has been accepted. 509 U.S. at 592-94.

Ultimately, the Court must find "an adequate fit between the data and the opinion proffered." *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quotation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires [the Court] to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The Court "may conclude that . . . simply too great an analytical gap [exists] between the data and the opinion proffered." *Id.* Ultimately, "[w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'"

11

*Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's notes to 2000 amendment).

 B. Analysis

  1. Dr. Mitchell Mullins

 Defendants do not challenge the relevance of Dr. Mullins's opinions. *See* [61] at 6-8; [72] at 6-7. Instead, they broadly attack several of his opinions: (1) Moysey cannot work, (2) he needs home remodeling and yardwork, (3) he requires 20 cervical injections and 20 lumbar injections, and (4) he needs a power scooter for the rest of his life. [61] at 7. They broadly assert, with minimal argument, that those opinions lack methodology or factual basis. *See id.* at 6–7. As to the third opinion, they argue Dr. Mullins's credentials do not qualify him to claim that Moysey needs the injections. *Id.* at 7. Moysey responds with an umbrella argument that Dr. Mullins based those opinions on an independent medical evaluation, including reviewing Moysey's medical records and conducting an exam and interview. [72] at 8. The Court first addresses Dr. Mullins's qualifications to render the opinion on injections, then the reliability of all the challenged opinions.

  i. Qualifications

 Defendants argue nothing in Dr. Mullins's credentials as an emergency physician or certified life care planner qualify him to opine on Moysey's need for cervical or lumbar injections. [61] at 7. Moysey responds that he is qualified based on his experience, employment history, certifications, and professional affiliations. [72] at 6.

Specifically, Moysey supplied evidence that Dr. Mullins is a Doctor of Osteopathic Medicine, a board-certified emergency physician, has years of experience as a physician, and is a Certified Life Care Planner. [71-5] at 1–2. Courts have found medical doctors and life care planners qualified to opine on a plaintiff's future healthcare needs. *See Durr v. GOL, LLC*, No. 18-3742, 2019 WL 6464971, at *4 (E.D. La. Dec. 2, 2019) (citing *Barrios v. Centaur LLC*, No. 17-585, 2019 WL 424679, at *4 (E.D. La. Feb. 1, 2019)). And Moysey presents evidence of Dr. Mullins describing his experience in evaluating patients, including those that have vocational evaluations and restrictions. [71-1] at 4. Other than blindly argue Dr. Mullins's credentials do not qualify him to opine on Moysey's need for injections, they present no contrary evidence, cite no authority, and make no other argument to that point. Accordingly, the Court rejects their argument that Dr. Mullins is not qualified to offer that opinion.

ii.   Reliability

Defendants argue all four challenged opinions are unreliable for lack of methodology and factual basis. Specific to the first opinion, they argue the following: (1) Dr. Mullins admitted he was not familiar with any objective criteria to determine whether someone is able to work; (2) his opinions on inability to work contradict Mississippi law[1]; and (3) he based his opinion that Moysey could not

---

[1] Moysey does not respond to this argument, and Defendants provide minimal authority on the issue. *See* [61] at 7 (citing *Walters v. Gilbert*, 158 So. 2d 43, 49 (1963)). But even assuming Defendants are correct, the Court should not exclude an expert just because the opinion is "not correct" or contradicts the law. *See VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764, 2023 WL 348963, at *10, 12 (N.D. Tex. Jan. 20, 2023) (concluding expert's

work on Moysey's feelings expressed during a limited Zoom meeting with Dr.
Mullins. [61] at 6-7. To the second opinion, they argue Dr. Mullins admitted he had
no factual basis to claim that Moysey needed home remodeling or yardwork, but do
not cite evidence or make any supporting arguments to that point. *Id.* at 7. To the
remaining two opinions, they simply argue Dr. Mullins lacks a factual basis or
methodology supporting those opinions. *Id.* Moysey responds that the opinions are
reliable based on: (1) a virtual examination of Moysey; (2) evaluations and
examinations by other healthcare providers; (3) health records; and (4) Mullins's
education, training, and experience in his practice of medicine. [72] at 7.

When asked how he evaluated Moysey to decide that he is permanently
disabled, Dr. Mullins said he reviewed all of Moysey's medical records, conducted an
exam, interviewed him, identified specific problems he had with daily activities, and
determined "what he can do and what he can't do." *See* Mullins Depo. [60-3] at 25.
But later, he testified that he did not agree with or use the medical records in
deciding that Moysey was permanently disabled. *Id.* at 25-26. He also conceded that
he was unaware of any objective criteria to use in evaluating someone for
permanent disability, and that he bases his opinions on subjective information. *Id.*
at 34.

Still, generally, "questions relating to the bases and sources of an expert's
opinion affect the weight to be assigned to that opinion rather than its

_____

opinion could not be excluded based on movant's belief that expert opined on alleged
damages that as a matter of law the plaintiff could not recover).

admissibility." *BNJ Leasing, Inc. v. Portabull Fuel Serv., LLC*, 591 F. Supp. 3d 125, 138 (S.D. Miss. 2022) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)). "Expert opinions that overlook certain data are not typically excluded on that basis . . . [and t]he Court should admit the testimony unless it is 'wholly unreliable.'" *Id.* (citations omitted). That is the case here—the questions relating to the bases of Dr. Mullins's opinions affect the weight of his opinions rather than their admissibility.

Importantly, Dr. Mullins conducted a virtual examination and interview of Moysey to decide whether he is disabled and the needs arising from any disability. And though Dr. Mullins stated he based his opinions on subjective information and did not use the medical records in forming his opinion, his bases are more fit for cross-examination rather than exclusion. Indeed, a separate doctor determined that Moysey had "[d]ebilitating lower back problems." [71-3] at 5; *see Buxton v. Lil' Drug Store Prods., Inc.*, No. 2:02-CV-178, 2007 WL 2254492, at *12 (S.D. Miss. Aug. 1, 2007) (concluding physician's opinion unreliable because he did not identify supportive medical records and no other physician concurred).

As much as Defendants argue Dr. Mullins admitted he lacked a factual basis for his opinion that Moysey needs home remodeling and yardwork, they do not point to that admission. The Court notes that, in his deposition, Dr. Mullins explained that Moysey's need for yardwork may change depending on his living situation. *See* [60-3] at 45. For example, Moysey does not have a yard because he currently lives in an apartment. *Id.* at 23. But Dr. Mullins also noted that Moysey lives in an

apartment *because* he cannot manage a yard after the accident. *Id.* at 45. In other words, Moysey has presented sufficient evidence that Dr. Mullins's testimony has a factual basis, and Defendants cite no contrary evidence.

Defendants have not presented sufficient information to render Dr. Mullins's opinions "wholly unreliable," and "questions relating to the bases and sources of [his] opinion . . . should be left for the jury's consideration." *See BNJ Leasing, Inc.*, 591 F. Supp. 3d at 141. Trial supplies Defendants with sufficient methods to attack Dr. Mullins's opinions. *See id.* at 137-38 (quoting *Daubert*, 509 U.S. at 596). Accordingly, the Court declines to exclude Dr. Mullins's opinions.

### 2. John Ward

Defendants' only argument about John Ward is that, to the extent his economic opinions are based on Dr. Mullins's opinions, they should be limited. [61] at 2, 8. Because the Court does not exclude Dr. Mullins's opinions, it has no reason to limit Ward's opinions.

### C. Conclusion

For the stated reasons, the Court denies Defendants' [60] Motion to Exclude or Limit Opinions of Mitchell Mullins and John Ward.

### IV. Motion to Strike Expert Disclosure

Finally, Defendants move to strike Moysey's expert disclosure of Dr. Matthew Gornet as untimely and insufficient. [62]. The dispute turns on whether Dr. Gornet is a retained or non-retained expert. [63] at 3; [74] at 2. Defendants concede if he is a non-retained, treating physician, Moysey timely designated him. [63] at 1. But

they argue Dr. Gornet admitted during a deposition that Moysey paid him to opine on future care, making him a retained expert. *Id.* And as a retained expert, Defendants argue Moysey did not timely disclose him by doing so about five months after the expert-disclosure deadline and failing to provide the required information in the disclosure. *Id.*

Moysey responds that, during his treatment, Dr. Gornet noted in his medical records that Moysey needs cervical and lumbar surgeries. [74] at 2. Moysey argues his request for Dr. Gornet's opinion stems from that treatment and the payment for the opinion was not "retaining" Dr. Gornet as an expert. *Id.* Accordingly, Moysey argues he timely and properly disclosed Dr. Gornet as a non-retained expert. *Id.*

A.  Standard

Parties must submit a written report from every expert witness who the party retains or specially employs to provide expert testimony. Fed. R. Civ. P. 26(a)(2)(B). That report must contain the expert's opinions, the reasons for those opinions, the information the experts considered in formulating the opinions, and any exhibits the expert will used to support her report. *Id.* Parties need not submit a written report for experts who are not specifically retained or employed to provide expert testimony, but who still qualify as experts under Rule 702. *Id.* 26(a)(2)(C). For non-retained experts, a party need only disclose the subject matter about which the witness will testify and a summary of the facts and opinions to which the expert will testify. *Id.*

A party's treating physician may fall into either category of expert witnesses.

Courts generally consider a treating physician to be a non-retained expert witness that need not provide a report. *See Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 882 (5th Cir. 2004) (citing Rule 26(a)(2) advisory committee's note to 1993 amendments). In that context, the treating physician can only testify to "facts disclosed during the care and treatment of the patient, including his diagnosis, the causation of the plaintiff's injuries, and the plaintiff's prognosis," and the party using the expert must comply with Rule 26(a)(2)(B). *Walker v. Target Corp.*, No. 2:16-CV-42, 2017 WL 2903253, at *1 (S.D. Miss. July 6, 2017). If a treating physician prepares an expert opinion or relies on outside sources, however, the Court will consider the treating physician to be a retained expert, and the party using the expert opinion must comply with Rule 26(a)(2)(C).

B.  Analysis

At issue is whether a non-retained, treating physician can convert to a retained expert. The Court considered that question in *Keyes v. Techtronic Industries Factory Outlets, Inc.*, No. 3:18-CV-671, 2020 WL 5592694 (S.D. Miss. Aug. 4, 2020). That case involved an expert who treated the plaintiff after a fall. *See id.* at *2. The expert performed surgery on her hip and provided follow-up care, on which the defendant did not dispute he could testify. *Id.* Instead, the defendant argued a subsequent "impairment rating" exceeded the scope of the expert's treatment. *Id.* at *3-4. And because the plaintiff designated the expert as a "non-retained, non-report-producing expert," it believed the "retained portion of his testimony," the impairment opinion, warranted exclusion. *Id.* at *4.

18

The Court resolved the issue based on the defendant's waiver of its objection but concluded that the plaintiff violated the rules by not disclosing the expert as "retained" for the impairment rating. *Id.* The Court explained that it would deny the motion for lack of prejudice even if the defendant did not waive its objection. *Id.* at *5. It determined the breach was "somewhat technical" and involved only one "discrete opinion" that exceeded the scope of treatment and did not prejudice the defendant. *Id.*

Dr. Gornet directed his opinion letter on costs to Moysey's counsel rather than Moysey, suggesting the opinion relates more to this case rather than Moysey's treatment. *See* [62-6] at 1. Dr. Gornet also noted that the letter responded to Moysey's counsel's correspondence and that the "opinions [were] within a reasonable degree of medical certainty," both suggesting that Moysey's counsel requested the opinion and retained him for it. *Id.* at 1-2. But Dr. Gornet's opinion on costs involves the same "somewhat technical" breach and constitutes "one discrete opinion" that exceeds the scope of his treatment. *See Keyes*, 2020 WL 5592694, at *5. Still, because the opinions exceed the scope of Moysey's medical records, Moysey should have provided a written report as the Rules require. Because he did not do so, the Court must decide the appropriate remedy.

When deciding whether to exclude expert evidence as a sanction for violating a scheduling order, the Court must consider four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure

19

such prejudice. *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020) (citing *In re Complaint of C.F. Bean LLC*, 841 F.3d 365, 372 (5th Cir. 2016)).

Moysey relies on *Gamboa v. Centrifugal Casting Machine Co.*, No. H-14-1273, 2015 WL 6835359 (S.D. Tex. Nov. 6, 2015) to argue the factors weigh in his favor and Dr. Gornet should be allowed to testify to his opinion. [74] at 4. There, the plaintiffs did not disclose two retained experts until four months after the expert-disclosure deadline. *Gamboa*, 2015 WL 6835359, at *2. Applying the factors, the Southern District of Texas found that: (1) the evidence was a key part of the plaintiff's damages evidence; (2) the defendant was not prejudiced because it had time to depose the experts; (3) because the defendant had time to depose the experts, a continuance was unnecessary; and (4) the plaintiff offered no legitimate justification for the delay. *See id.* at *2-4. Based on those factors, the court did not strike the experts. *Id.* at *4.

This case is similar to *Gamboa*. Moysey argues the evidence is important as to damages, and Defendants do not seem to dispute the opinion's importance. *See* [63] at 6. That weighs in favor of including the testimony. *See Gamboa*, 2015 WL 6835359, at *2. Additionally, Defendants merely cite authority on what has constituted prejudice rather than explain how the delay prejudices them. *See* [63] at 6-7. They also had time to depose Dr. Gornet, and this matter is set for pretrial conference on March 16th, so a continuance is neither necessary nor ideal. The prejudice factor favors inclusion, while the continuance factor is neutral. *See*

20

*Gamboa*, 2015 WL 6835359, at \*2-3. Finally, Moysey offers no legitimate explanation for the delay in disclosing the report but mostly relies on *Gamboa*. *See* [74] at 4-5. The fourth factor favors exclusion.

Based on the factors and authority, the Court is inclined to allow the opinion. The report is only one "discrete opinion" that exceeded the scope of treatment, and it did not prejudice Defendants. *See Keyes*, 2020 WL 5592694, at \*5. And though Moysey does not explain the breach, the remaining factors favor inclusion.

C. Conclusion

For the reasons stated in this section, the Court denies Defendants' [62] Motion to Strike Dr. Gornet's opinion.

V.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS Defendants' [58] Motion for Partial Summary Judgment and DISMISSES Moysey's direct negligence claim against BMR Transport and any punitive damages claims against both Richard Cook and BMR Transport.

The Court also DENIES Defendants' [60] Motion to Exclude or Limit Opinions of Mitchell Mullins and John Ward, and [62] Motion to Strike Expert Disclosure. Dr. Mitchell Mullins and John Ward will be allowed to testify, and Dr. Matthew Gornet's opinion on surgery costs will be allowed.

SO ORDERED, this the 13th day of March, 2023.

21

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE